**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Russell Keith Howard,<br><br>Plaintiff,<br><br>v.<br><br>Blue Cross Blue Shield of Arizona, *et al.*<br><br>Defendants. | No. CV-16-03769-PHX-JJT<br><br>**ORDER** |

Plaintiff Russell Keith Howard seeks judicial review of Defendant Blue Cross Blue Shield of Arizona's ("BCBSAZ") denial of insurance coverage under Plaintiff's employee health insurance plan ("the Plan"), pursuant to ERISA, 29 U.S.C. § 1132 *et seq.* (Doc. 33, TAC.) Both Plaintiff and Defendant submitted Opening Briefs (Doc. 77, Pl.'s OB; Doc. 60, Def.'s OB) and Defendant filed a Response Brief (Doc. 72, Def.'s RB).[1]

**I.   BACKGROUND**

Plaintiff is an employee of Sunstate Equipment Co., LLC ("Sunstate"). (TAC ¶ 8.) Defendant[2] is the medical insurance provider for Sunstate employees, including Plaintiff.

---

[1] After striking Plaintiff's Opening Brief for noncompliance with Local Rule of Civil Procedure 7.2(e), the Court granted Plaintiff leave to file an amended Opening Brief and granted Defendant leave to file a supplemental Response (Doc. 73), as its original Response Brief was filed before the Court struck Plaintiff's original Opening Brief. Defendant did not file a supplemental Response and Plaintiff did not file a Response of any kind.

[2] The Plan is also listed as a Defendant, which is proper under 29 U.S.C. § 1132(d)(1) ("An employee benefit plan may sue or be sued under this subchapter as an entity").

(TAC ¶ 8.) In March 2014, Plaintiff was diagnosed with prostate cancer that required radiation treatment. Plaintiff was medically eligible to receive either photon or proton beam radiation therapy. (TAC ¶10.) Plaintiff alleges that through consultation with his treating oncologist, he determined that proton beam radiation therapy ("PBRT") would likely be more effective. (TAC ¶ 12.) Plaintiff sought precertification of PBRT, which was denied in May 2014 when Defendant explained in a decision letter that PBRT "does not meet the BCBSAZ medical necessity standards." (Doc. 63-1 at 3.) Plaintiff subsequently paid out of pocket for the projected cost of the treatment—$105,625.00. (TAC ¶¶ 12–13.)

Plaintiff underwent PBRT from June 2014 through September 2015. (TAC ¶ 14.) Plaintiff's medical provider submitted claims for the radiation costs to Defendant, who denied them. (TAC ¶ 15.) In April 2015, the provider appealed Defendant's decision and Defendant again denied Plaintiff's claim on the grounds that PBRT (as opposed to photon beam therapy) was not medically necessary. (TAC ¶ 16.) Plaintiff and his provider filed a second appeal, which was reviewed by a third-party independent reviewer retained by Defendant. (TAC ¶ 17.) Defendant again denied Plaintiff's claim on August 12, 2015. (TAC ¶ 17.) Plaintiff filed his Complaint seeking judicial review of that denial on August 29, 2016.[3] (Doc. 1.)

On November 2, 2018, the Court issued an Order (Doc. 81, Nov. 2 Order) denying in part and granting in part Plaintiff's Motion to Admit Non-Record Documents (Doc. 78). In that Order, the Court determined that it must review the denial of Plaintiff's benefits under the abuse of discretion standard. (Nov. 2 Order at 5.) As the parties' briefs were filed before the Court entered the November 2 Order, a significant portion of each brief is

---

[3] The Court previously granted Defendant's Motion to Dismiss Plaintiff's Third Amended Complaint to the extent it alleged Arizona state law claims. (Doc. 52.) Having already found that those state claims are preempted by ERISA, the Court will not address them here. *See* 29 U.S.C. § 1144. Further, Defendant does not dispute that Plaintiff exhausted his administrative remedies under the Plan and that this appeal is properly before the Court. *See* 29 U.S.C. § 1133(2) (requiring "a reasonable opportunity . . . for a full and fair review by the appropriate named fiduciary of the decision denying the claim" before judicial review is permitted). In fact, Plaintiff alleges that Defendant's third-party independent reviewer informed Plaintiff that he had exhausted his administrative appeals and "that Plaintiff's only remaining effective remedy was litigation." (TAC ¶ 17.)

devoted to arguments about which standard of review the Court must apply. The Court need not address those arguments again.

After viewing Plaintiff's Opening Brief in light of an abuse of discretion review, the Court will address the following arguments: 1) Defendant abused its discretion by applying an outdated set of Medical Coverage Guidelines ("MCG") that failed to consider the improved outcomes of PBRT or any individualized clinical assessment of Plaintiff's condition; and 2) Defendant similarly abused its discretion by ignoring the opinions of Plaintiff's treating oncologists, instead relying largely on the opinions of physicians who specialize in internal medicine and the opinion of one oncologist who was constrained by the rote application of the MCG.

Further, Plaintiff argues that Defendant operated under a conflict of interest because: 1) Defendant controls the contents of the MCG and thereby dictates what treatments are medically necessary; and 2) Defendant both administers claims and is financially obligated to fund those claims when they exceed the $200,000 stop loss limit funded by Sunstate.

## II. LEGAL STANDARD

Under 29 U.S.C. § 1133, every ERISA-covered insurer must "provide adequate notice in writing" of a denial of benefits and must "[set] forth the specific reasons for such denial." 29 U.S.C. § 1133(1). Further, the insurer must "afford a reasonable opportunity . . . for a full and fair review by the appropriate named fiduciary of the decision denying the claim." *Id.* Under § 1132(a)(1)(B), an insurance beneficiary whose claim has been denied may bring suit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Such an appeal requires a court to interpret the insurance policy as it would any other contract, "in an ordinary and popular sense as would a [person] of average intelligence and experience." *Allstate Ins. Co. v. Ellison*, 757 F.2d 1042, 1044 (9th Cir. 1985). If there is ambiguity in the terms of the contract, it must be resolved in favor of the insured. *Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, 539–41 (9th Cir. 1990).

When a court reviews a benefits decision for abuse of discretion, it must determine whether it is "'left with a definite and firm conviction that a mistake has been committed,' and [it] may not merely substitute [the court's] view for that of the fact finder." *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676 (9th Cir. 2011) (quoting *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009)). Under this deferential standard, "even decisions directly contrary to evidence in the record do not necessarily amount to an abuse of discretion." *Boyd v. Bert Bell/Pete Rozelle NFL Players Retirement Plan*, 410 F.3d 1173, 1178 (9th Cir. 2005). In fact, "[a]n ERISA administrator abuses its discretion only if it (1) renders a decision without explanation, (2) construes provisions of the plan in a way that conflicts with the plain language of the plan, or (3) relies on clearly erroneous[4] findings of fact." *Id.* (citing *Bendixen v. Standards Ins. Co.*, 185 F.3d 939, 944 (9th Cir. 1997)). In short, courts "will uphold the decision of an ERISA plan administrator 'if it is based upon a reasonable interpretation of the plan's terms and was made in good faith.'" *Id.* (quoting *Estate of Shockley v. Alyeska Pipeline Serv. Co.*, 130 F.3d 403, 405 (9th Cir. 1997)).

While the abuse of discretion standard typically allows for consideration of less extrinsic evidence than does its more lenient *de novo* counterpart, courts are still required to consider the potential effects of an alleged conflict of interest. *Lukas v. United Behavioral Health*, 504 Fed. App'x 628, 629 (9th Cir. 2013) ("A procedural irregularity, like a conflict of interest, is a matter to be weighed in deciding whether an administrator's decision was an abuse of discretion"). In examining a potential conflict of interest, courts may "consider evidence outside the administrative record to decide the nature, extent, and effect on the decision-making process of any conflict of interest; the decision on the merits, though, must rest on the administrative record once the conflict (if any) has been established." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 967 (9th Cir. 2006).

---

[4] "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing [body] on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Concrete Pipe & Prods. of Cal., Inc. v. Construction Laborers Pension Trust for So. Cal.*, 508 U.S. 602, 622 (1993) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

- 4 -

"While [a] conflict does not displace the deferential standard of review, it is one of the several, case-specific factors the Court considers in determining whether a plan administrator abused its discretion in denying a benefits claim." *Puccio v. Standard Ins. Co.*, 80 F. Supp. 3d 1034, 1040 (N.D. Cal. 2015). Even if a court identifies a conflict of interest, "[t]he level of skepticism with which a court views a conflicted administrator's decision may be low if a structural conflict of interest is unaccompanied, for example, by any evidence of malice, of self-dealing, or of a parsimonious claims-granting history." *Id.* at 970.

Normally, "a plaintiff suing under [§ 1132] bears the burden of proving his entitlement to contractual benefits." *Horton v. Reliance Standard Life Ins. Co.*, 141 F.3d 1038, 1040 (11th Cir. 1998). The Ninth Circuit has specifically adopted this burden standard in the *de novo* context, and the Court sees no reason why this burden would not apply in the more deferential abuse of discretion review. *See Muniz v. Amec Const. Mgmt., Inc.*, 623 F.3d 1290, 1295 (9th Cir. 2010) (citing *Horton*, 141 F.3d at 1040). However, "if the insurer claims that a specific policy exclusion applies to deny the insured benefits, the insurer generally must prove the exclusion prevents coverage." *Horton*, 141 F.3d at 1040 (citing *Farley v. Benefit Trust Life Ins. Co.*, 979 F.2d 653, 658 (8th Cir. 1992)).

Where an insurer denies coverage for treatment because it finds the treatment is not medically necessary, "[t]he Ninth Circuit has not considered whether the requirement of medical necessity is a term of coverage or an exclusion." *Baxter v. MBA Grp Ins. Trust Health & Welfare Plan*, 958 F. Supp. 2d 1223, 1229 (W.D. Wash. 2013). At least one district court of the Ninth Circuit has concluded, based on opinions from three other circuit courts, that "medical necessity" does not constitute an exclusion, and thus the burden remains with the plaintiff. *Id.* at 1229–30 (citing *Farley*, 979 F.2d at 658; *Fuja v. Benefit Trust Life Ins. Co.*, 18 F.3d 1405, 1408 (7th Cir. 1994); *Juliano v. Health Maintenance Org. of New Jersey, Inc.*, 221 F.3d 279, 287–88 (2d Cir. 2000)).

In short, a plaintiff must prove that the treatment he or she sought was medically necessary under the terms of the plan. Where a definition of medical necessity is written in

the terms of a plan, courts must recognize that, in interpreting that provision, insurers have "discretion to determine whether treatment was medically necessary during the administrative review process of [a plaintiff's] claim." *Harlick v. Blue Shield of California*, 686 F.3d 699, 720 (9th Cir. 2012). Even upon finding that an insurer abused its discretion in interpreting the medical necessity requirement, a court may overturn only if the insurer failed to provide a "full and fair review" of the denial. *Harlick*, 686 F.3d at 720. A full and fair review is impossible where an insurer "(1) renders a decision without explanation, (2) construes provisions of the plan in a way that conflicts with the plain language of the plan, or (3) relies on clearly erroneous findings of fact." *Bendixen*, 185 F.3d at 944.

## III. ANALYSIS

The Court finds that Defendant did not abuse its discretion in finding that, under the terms of the Plan, PBRT was not medically necessary. Defendant undertook a full and fair review of the denial, which was based on the apparent and plain language of the Plan. In doing so, Defendant satisfied each prong of the *Bendixen* test. *Id.*

First, Defendant provided Plaintiff an explanation for its decision. In fact, upon rejecting Plaintiff's precertification, Defendant warned that PBRT is not considered medically necessary under the Plan and would not be covered. (TAC ¶ 16.) Plaintiff does not deny that this letter conferred knowledge that Defendant would not cover PBRT.

Second, Defendant construed the provisions of the Plan based on its plain language. The MCG addresses PBRT specifically, stating it "is considered not medically necessarily for clinically localized prostate cancer based upon insufficient evidence to support improvement of the net health outcome, and insufficient evidence to support improvement of the net health outcome as much as, or more than, established alternatives." (Doc. 63-1 at 6.) There are instances outlined in the MCG when PBRT would be considered medically necessary, such as when it is used as "primary therapy for melanoma of the uveal tract" or "postoperative therapy in an individual who has undergone biopsy or partial resection" of certain tumors. (Doc. 63-1at 6.) But through interpretation of the terms of this section, Defendant determined that PBRT was not medically necessary in Plaintiff's case.

Third, Plaintiff argues[5] that Defendant abused its discretion by relying on "clearly erroneous findings of fact." *Bendixen*, 185 F.3d at 944. Plaintiff argues that Defendant should not have relied on an outdated MCG which in turn relied on studies that failed to take into account recent science on PBRT. (Pl.'s OB at 9.) But in this argument, Plaintiff offers no evidence that the MCG on which Defendant relied was "clearly erroneous." Instead, Plaintiff asserts that a more recent version would reflect that "it was well known in 2012-2013 that [PBRT] was and is a promising area in a rapidly evolving standard of care." (Pl.'s OB at 9.) In support, Plaintiff cites to several medical articles in the Record. But none of these—nor Plaintiff's bare assertion that PBRT is becoming more widely used—satisfy the Court that the older MCG represents "clearly erroneous" findings of fact.

Plaintiff also argues that Defendant abused its discretion by failing to take into account the opinions of Plaintiff's treating oncologists and instead relying on independent reviewing doctors who do not specialize in oncology. (Pl.'s Br. at 11.) Plaintiff contends that Defendant's own policy requires oncologists be consulted in cancer cases, but Plaintiff cites only to a provision in Defendant's Utilization Management Program Description stating that a peer clinical reviewer "[i]s a health professional peer reviewer who possesses a current and valid license in the same licensure category as the ordering provider." (Doc. 65-2 at 29.) In response, Defendant points to a standard that requires only "a health care professional who has appropriate training and experience in the field of medicine involved." (Doc. 66-3 at 5.) The parties do not clarify for the Court which document is binding in this scenario. Regardless, the Court declines to find that reliance on two licensed doctors of internal medicine, rather than an oncologist, leads to a clearly erroneous finding of fact.[6]

---

[5] While Plaintiff does not state his arguments in the *Bendixen* framework or cite to any case law that sets out a standard for when the Court may find that Defendant abused its discretion, that is likely because Plaintiff's Opening Brief was largely devoted to the issue of which standard of review to apply. The Court does its best to reframe Plaintiff's arguments into a manageable and appropriate judicial standard for this stage of the proceeding.

[6] Defendant also cites a persuasive Fifth Circuit opinion which held that "a plan administrator does not abuse its discretion merely by selecting a reviewing physician who

Further, Defendant did eventually have an oncologist review the denial. (Doc. 64-7 at 4–6.) Plaintiff argues that the oncologist had no discretion to offer his true opinion because the MCG dictated a finding that PBRT was not medically necessary, even though the oncologist noted the benefits offered by such treatment. (Pl.'s OB at 11.) Disregarding for a moment that Plaintiff does not provide authority for his contention that Defendant abuses its discretion when it requires reviewing doctors to reference its MCG, the oncologist's opinion does not reflect certainty that PBRT is medically necessary. Rather, the oncologist noted several studies that have indicated PBRT is effective but not "superior to photon based approaches." (Doc. 64-7 at 5.) The Court does not construe the oncologist's ultimate conclusion—that PBRT "does not meet policy criteria for coverage"—as a clearly erroneous fact where his opinion on the efficacy of PBRT was no more definitive than any other opinion in the record.

Turning to Plaintiff's argument that Defendant operated under a conflict of interest, the Court notes that such an allegation is one of "the several, case-specific factors the Court considers in determining whether a plan administrator abused its discretion in denying a benefits claim." *Puccio,* 80 F. Supp. 3d at 1040. While the Court previously denied Plaintiff's Motion to Admit Non-Record Documents (Nov. 2 Order) because it determined that extrinsic evidence was not merited, the Court must still examine the alleged conflict of interest without any of the new evidence proffered by Plaintiff.

Plaintiff argues two potential conflicts of interest. First, Plaintiff argues that it is an inherent conflict where Defendant is allowed to control the contents of the MCG, which later will be applied to determine whether coverage is medically necessary. (Pl.'s OB at 12.) In Plaintiff's view, this creates a conflict of interest because Defendant "asserts the exclusive right to interpret these terms, which are deliberately vague and not tied to any objective standard." (Pl.'s OB at 12.) While Plaintiff may be correct that Defendant oversaw the creation of the MCG with the intent of lowering its own costs, he offers no evidence to prove this is true. Further, the Court is not prepared to declare the production

does not have the exact same specialty as the claimant's treating physician." (Def.'s RB at 9 (quoting *Davis v. Aetna Life Ins. Co.*, 699 F. App'x 287, 295 (5th Cir. 2017)).)

of medical coverage guidelines as a conflict of interest in every case, as it would be under Plaintiff's argument. That would mean that no Plan can adopt guidelines that declare certain treatments not medically necessary. Plaintiff points to no authority that permits such a finding.

Finally, Plaintiff argues that there is a structural conflict of interest because Defendant administers claims but has a financial incentive to deny those claims. (Pl.'s OB at 13.) This is true to an extent, as Defendant is obligated to pay expenses above the stop-loss limit covered by Sunstate. (Pl.'s OB at 13.) But that stop-loss limit is $200,000, and PBRT cost Plaintiff $105,625.00. Even combined with the $36,279 that Defendant previously paid for Plaintiff's coverage, the cost of PBRT would not exceed the stop-loss limit. (Def.'s OB at 10.) Without a serious possibility that Defendant would be financially liable for the PBRT, the Court does not consider the financial entanglement to constitute a serious risk of conflict of interest. *See Puccio,* 80 F. Supp. 3d at 1040 ("The level of skepticism with which a court views a conflicted administrator's decision may be low if a structural conflict of interest is unaccompanied, for example, by any evidence of malice, of self-dealing, or of a parsimonious claims-granting history.")[7]

## IV. CONCLUSION

Plaintiff has not satisfied his burden of proving that he is entitled to benefits for his PBRT treatment because he has not shown the Defendant abused its discretion in deciding that PBRT was not medically necessary. The Court does not find that Defendant abused its discretion in reviewing Plaintiff's claim pursuant to the MCG and the plain language of the Plan.

**IT IS THEREFORE ORDERED** affirming Defendant Blue Cross Blue Shield of Arizona's denial of certain insurance coverage under Plaintiff's employee health insurance plan.

---

[7] Defendant concedes that it denied all but one request for PBRT coverage between 2015 and 2017. (Doc. 77-2 at 10.) And while Plaintiff argues that this suggests a financial conflict of interest, he does not offer proof that Defendant denied those claims because of the cost of PBRT rather than a determination reflected in the MCG that PBRT has not proven any more effective than photon-based therapy. (Pl.'s OB at 12.)

**IT IS FURTHER ORDERED** directing the Clerk to enter judgment in favor of Defendants and to close this case.

Dated this 12th day of July, 2019.

*Honorable John J. Tuchi*
United States District Judge